## · HELM v UNIVERSITY OF MICHIGAN

Docket No. 75844. Submitted November 15, 1984, at Lansing.—Decided September 20, 1985.

Paul Helm was discharged from his employment as a custodian at the University of Michigan for his failure to report to work or to contact his supervisor. Helm filed a claim for unemployment benefits. The Michigan Employment Security Commission denied benefits, holding that his discharge for failure to report for work or notify his employer was a discharge for misconduct. Helm sought a hearing before a referee. Helm testified that he had become intoxicated and suffered an alcoholic blackout. The referee concluded that Helm's termination was an involuntary leaving due to his suffering from the illness of alcoholism, that failure to report to work was not disqualifying conduct, and that Helm was entitled to benefits. The University of Michigan sought review of the referee's decision by the Board of Review. The Board of Review reversed. Helm appealed to the Washtenaw Circuit Court, which affirmed the decision of the Board of Review, William F. Ager, Jr., J. Helm appealed. *Held:*

1. The hearing referee properly considered the letter from the hospital therapist relative to Helm's admission to the hospital for alcoholism, since it was evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs.

2. Both the Board of Review and the circuit court failed to adequately consider the referee's implicit finding as to Helm's credibility. Since this matter turned largely on Helm's credibility, and since the referee was in the superior position to evaluate the question of credibility, it was error for the Board of Review and the circuit court to fail to give sufficient weight to the referee's determination.

Reversed and remanded.

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 91 *et seq.*

Comment note on hearsay evidence in proceedings before state administrative agencies. 36 ALR3d 12.

See also the annotations in the ALR3d/4th Quick Index under Unemployment Compensation.

1. Unemployment Compensation — Evidence.

   A referee in a hearing on an employment security claim should, in the absence of any objection, give documentary evidence the same probative effect as evidence of that type would be given by reasonably prudent men in the conduct of their affairs.

2. Unemployment Compensation — Appeal — Findings of Fact.

   The findings of a referee who conducts the hearing on an employment security claim should be considered by the Employment Security Commission Board of Review in its review, along with the consistency and inherent probability of the testimony given at the hearing; the significance of the referee's findings depends largely on the importance of credibility in the particular case.

Legal Services of Southeastern Michigan, Inc. (by *Deborah A. Johnson*), for claimant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Patricia L. Sherred,* Assistant Attorney General, for the Michigan Employment Security Commission.

Before: Wahls, P.J., and R. M. Maher and R. E. Noble,* JJ.

Per Curiam. Claimant appeals as of right from a circuit court opinion and order which affirmed a decision of the Michigan Employment Security Commission Board of Review, denying claimant's application for unemployment benefits following his discharge by the respondent, the University of Michigan.

Claimant was employed as a custodian by respondent from September 7, 1978, through June 8, 1981. Evidence admitted in a hearing before a referee established that on June 4 or 5, 1981, claimant informed his supervisor that he was going to the doctor. The supervisor told claimant to "get back to her" with the results of his visit. Claimant failed to do so, and, in fact, did not

---

* Circuit judge, sitting on the Court of Appeals by assignment.

contact his supervisor to inform her of his where-abouts for several days. Claimant's supervisor was unable to locate claimant through his girlfriend until approximately June 9, 1981, at which time the girlfriend informed the supervisor that claim-ant was hospitalized under the care of a particular doctor. The supervisor's attempts to speak to the doctor were unsuccessful because the doctor would not discuss his patient's condition. At the hearing, respondent presented a letter purportedly written by a therapist at the hospital, on hospital statio-nery, which stated that claimant was admitted on June 9, 1981, for the treatment of alcoholism. Both claimant and claimant's supervisor testified that the supervisor was aware of claimant's alcoholism prior to June 5, 1981. Finally, claimant testified that he could not recall what he had done from June 5, 1981, until June 9, 1981, because he had had an alcoholic blackout. He stated that a friend of his had discovered him where he had been living in his truck. Claimant was terminated from his employment for failure to "call or show up for work for 3 consecutive days", an employment re-quirement. On the basis of this evidence, the hear-ing referee concluded that the claimant's "separa-tion was in fact an involuntary leaving due to the claimant's illness concerning alcoholism, and the claimant's separation should be considered under Section 29(1)(a) of the Act, the voluntary leaving section of the Michigan Employment Security Act". The referee further concluded that claim-ant's actions constituted an "involuntary act" and so could not be considered to be disqualifying misconduct.

Respondent appealed from this decision to the MESC Board of Review. After reviewing the record and the referee's findings of fact and conclusions of law, the Board of Review reversed, stating,

"There are no proofs in this record other than claimant's unsupported testimony that his absences where due to alcoholism. A letter sumitted by the claimant, as establishing this fact is not adequately indentified as to the author, or the claimant's allegation that this condition existed.

"The failure of the claimant to report for work, and his further failure to contact the employer, as required, to advise of the reasons for his continued absence show the kind of wilful disregard of the employer's interests which have regularly been held to constitute misconduct under the Act."

Claimant, in turn, appealed from this decision to the circuit court. The circuit court affirmed the decision of the Board of Review, finding that that decision was not contrary to law and that it was supported by competent, material, and substantial evidence because, "[t]here is no creditable proof as to why he did not report to his employer the reason that he would not be to work or that he was going into the hospital".

On appeal from the circuit court's opinion and order, claimant argues that the circuit court misapplied the standard of review by failing to consider evidence which contradicted the Board of Review's findings of fact and by according no weight to the referee's credibility determinations. While we agree that this did occur, we believe that a more fundamental error of law occurred at both the Board of Review and circuit court stages of this inquiry. Contrary to the Board of Review's finding, the letter from the therapist at claimant's hospital was not submitted by claimant, but rather by the respondent. In addition, even had claimant submitted the letter, we find that the letter was entitled to be given probative effect by the referee, as it was "evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs". The letter was signed by the therapist and was written on hospital stationery. Fi-

nally, we note that no objection was raised to the submission of the letter at the hearing. In addition, even without the letter in support of his position, claimant's testimony, if believed, constituted proof of his alcoholic blackout. We do not believe that either the Board of Review or the circuit court adequately considered the implicit finding of credibility made by the referee:

"We do not require that the examiner's findings be given more weight than in reason and in light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. *We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case.* To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial'." (Emphasis supplied.) *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 127; 223 NW2d 283 (1974), adopting the language of *Universal Camera Corp v National Labor Relations Borad,* 340 US 474; 71 S Ct 456; 95 L Ed 2d 456 (1951).

Under the circumstances of this case, we find that the proper remedy is to remand to the Board of Review so that the Board may review the evidence in the proper light. We do not retain jurisdiction. In light of this disposition, we need not review respondent's "last straw" doctrine argument.

Reversed and remanded to the MESC Board of Review for proceedings consistent with this opinion.